UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CONDRA SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:19 CV 425 |
| | ) |
| CITIZENS TELECOM SERVICES | ) |
| COMPANY LLC, | ) |
| | ) |
| Defendant. | ) |

**OPINION and ORDER**

This matter is before the court on defendant's motion for summary judgment. (DE # 44.) Due to this procedural posture, the facts are recited in a light most favorable to plaintiff. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

**I.     BACKGROUND**

Plaintiff Condra Smith is an African-American woman who possesses a bachelor's degree in computer science from Indiana University. She began working as a Residential Sales and Service Consultant for defendant Citizens Telecom Services Company LLC, which does business under the name Frontier, in November of 2015. Plaintiff worked out of defendant's call center in Fort Wayne, Indiana, and was a union employee.

In 2016, Troy Sells, a white male who was employed as Director of Facilities, engaged in an ongoing practice of following and photographing plaintiff in the employee parking lot. Plaintiff inquired with her employer's security department about whether she was violating parking lot rules, and was told that security was unaware of

any issues. Plaintiff believed she was targeted due to her race, and eventually reported the behavior to Human Resources Director Andrew Hoeppner and Human Resources Manager Suzi Eberle, who informed her that they had viewed the pictures, were aware Sells was following plaintiff, and were not willing to take any further action.

Plaintiff requested the presence of union stewards and discussed escalating to a grievance. At a follow-up meeting, union stewards stated on plaintiff's behalf that it was against policy for Sells to harass plaintiff. During this meeting Eberle and Hoeppner stated for the first time that plaintiff should not have parked in the lot to begin with. According to plaintiff, numerous white employees parked in the same lot, and she was only informed she should not park in the lot when she complained about a white employee photographing her. Eberle questioned plaintiff about whether the pictures Sells took depicted her car. Plaintiff stated she felt unsafe, and Eberle responded that she would make sure plaintiff was terminated and left the room.

Plaintiff applied for other positions at the company, but claims her attempts were thwarted. For example, she interviewed for the position of IT Support Representative in July of 2017, and was told by the hiring manager that the team really liked her, but that they had been told by human resources that another opportunity was in the works for plaintiff. Plaintiff believes that human resources interfered with her attempts to secure this promotion as retaliation for her complaints about Sells. After this, plaintiff claims that almost every position she applied for was quickly denied without a chance to

interview, with the position being filled by a non-African-American individual nearly every time.

In May of 2018, plaintiff again noticed that Sells was surveilling her. She was told to move her car before it was towed, despite the fact that white co-workers were allowed to continue to park there. According to plaintiff, Sells threatened to have plaintiff's car towed and told plaintiff she did not know who she was messing with. Plaintiff again told her superiors that she felt harassed by Sells because of her race. According to plaintiff, Hoeppner told plaintiff the events she complained of never happened, that she needed to stop reporting issues, and that he would be putting a memo in her file indicating that she had been insubordinate.

After her complaints about Sells, plaintiff claims she was met with extreme micromanagement, openly public criticism, and humiliation that white employees were not subject to. She was not allowed into certain buildings without a management escort and she was denied training opportunities. Plaintiff claims that Maggie Kruger, her manager's manager, told her she would send plaintiff "back to where she came from" and to "find another job" because "Frontier doesn't want you here. I don't want you here." When another employee reported Kruger's behavior as inappropriate, human resources reached out to plaintiff in order to conduct an investigation. It is unclear what, if anything, came of the investigation.

In July of 2018, the company announced a change in building hours, with new limits set from 7:30 a.m. to 5:00 p.m. The company noted that security would not be

3

present during those hours. A meeting was called where plaintiff was advised it was problematic that she was arriving at the facility outside of the company's "core" hours. Plaintiff asked why white workers were permitted to do the same, and why the meeting did not involve all employees. Hoeppner interjected that plaintiff was entering the facility too early, "working too much," and that there were issues with her instant messaging practices. Hoeppner stated that this conduct was grounds for termination and asked for plaintiff's work badge to begin the termination process. Plaintiff stated she would retrieve the badge from her office. Hoeppner then stated that he would write down that plaintiff had resigned. When plaintiff countered that she was not resigning, Hoeppner repeatedly insisted plaintiff was resigning. Eventually, Hoeppner dropped the issue and plaintiff continued working at the company without any formal disciplinary documentation.

In 2019, Hoeppner, plaintiff's manager Grace Studebaker, Studebaker's manager Maggie Kruger, and Shane Jewel held a meeting with plaintiff where they stated that, because of the "dynamics" between the parties, Hoeppner wanted to have a record of all meetings held with plaintiff and that they would email her to schedule any meetings in the future.

On November 22, 2019, Studebaker approached plaintiff's desk and asked to meet with plaintiff. Plaintiff asked if she had sent an email about the meeting and CC'd the appropriate parties. Studebaker said that she had forgotten about this procedure, and walked back towards her own desk. Kruger then approached plaintiff in a similar

4

manner, and plaintiff again inquired about the email procedure. Kruger left and did not send an email. Later the same day, Kruger, Jewel, Studebaker, and two security guards in plain clothes approached plaintiff's desk. Less than 30 seconds later, police entered the workplace with guns drawn, and pointed them at plaintiff. Kruger then demanded plaintiff's work badge. Plaintiff was escorted from the building. Until she was terminated, plaintiff was never written up, nor did she receive any formal discipline during her employment with defendant.

Plaintiff filed the present lawsuit in 2019, alleging that defendant violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by firing her, failing to promote her, and creating a hostile work environment on the basis of her race and in retaliation for her decision to report racial discrimination on the part of Sells. Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (DE # 44.) Plaintiff has responded, and defendant has replied.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows for the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison,*

*Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC,* 45 F.3d at 234.

### III. DISCUSSION

Title VII prohibits intentional discrimination in employment on the basis of statutorily proscribed factors, such as race. 42 U.S.C. § 2000e. An employer can discriminate in many ways, including by firing an employee, failing to promote an employee, or by creating a hostile work environment. *See id.* In this case, plaintiff claims that defendant discriminated against her in these ways on the basis of her race and/or in retaliation for engaging in a protected activity by reporting Sells's harassment, which she suspected was race-based.

In *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 765 (7th Cir. 2016), the Seventh Circuit overruled a long line of prior cases that insisted on the use of direct and indirect frameworks when determining whether Title VII claims survived summary judgment. Since *Ortiz*, the Seventh Circuit has articulated various frameworks that can assist a district court in assessing whether the evidence in an employment discrimination case justifies proceeding to trial. For example, plaintiff may prove discrimination in a "holistic" fashion by simply assessing "whether the evidence would permit a reasonable factfinder to conclude" that the protected factor "caused the discharge or other adverse employment action." *McDaniel v. Progress Rail Locomotive, Inc.,* 940 F.3d 360, 369 (7th Cir. 2019) (quoting *Ortiz,* 834 F.3d at 765). Alternatively, a plaintiff may survive summary judgment under the well-known burden-shifting framework under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). However, a district court is not required to "choose one of those two heuristics for the case — there well may be more

7

than two." *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040–41 (7th Cir. 2023). The court's question is, ultimately, "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 883 (7th Cir. 2018); *Lehman v. Goshen Cmty. Sch.*, No. 3:19-CV-982 DRL-MGG, 2020 WL 5110290, at *2 (N.D. Ind. Aug. 28, 2020) ("The court avoids sorting evidence mechanically into two different piles—one 'direct' and one 'indirect'—and instead focuses on the overriding central inquiry: whether the evidence would permit a reasonable jury to conclude that [a protected factor] caused discrimination.").

At the outset, the court notes that this particular case involves many "he said / she said" situations, which make summary judgment inappropriate. For example, plaintiff claims she informed defendant that she believed Sells targeted her in the parking lot due to her race, while defendant says plaintiff never mentioned race when she complained. Plaintiff claims she was pushed to resign, special rules were made for her, and she was called insubordinate when reporting what she felt was discriminatory behavior. Defendant disputes that these events occurred as plaintiff describes them. According to plaintiff, she was targeted and ultimately terminated because she was African-American and/or because she reported Sells's conduct, but defendant claims this is a simple case of plaintiff being fired for insubordination in the form of not attending a meeting as requested on her final day of employment.

As these examples indicate, the parties disagree on how many events transpired. But if a fact-finder believes plaintiff's version of events, they could ultimately side with

8

her. *Cf. Harden v. Marion Cnty. Sheriff's Dep't,* 799 F.3d 857, 865 (7th Cir. 2015) (noting that "selective enforcement" can raise an inference of discrimination) (quotation omitted); *see also, e.g., Principe v. Village of Melrose Park,* No. 20 CV 1545, 2022 WL 488937, at *10 (N.D. Ill. Feb. 17, 2022) (holding that "inconsistent disciplinary practices," among other pieces of evidence, supported the plaintiff's discrimination claim); *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 315 (7th Cir. 2011) (an employer who advances a fishy reason takes the risk that disbelief of the reason will support an inference that it is a pretext for discrimination). Accordingly, a fact-finder should be tasked with sorting out what actually occurred in this case, and who should prevail. *Russell v. Bd. of Trs. of the Univ. of Ill. at Chi.,* 243 F.3d 336, 340 (7th Cir. 2001) (summary judgment "is a singularly inappropriate time to resolve" a "he said, she said" dispute).

Further, in this case the court finds that a holistic assessment of all of the facts, when taken in a light most favorable to plaintiff, could support a jury verdict of discrimination in the form of termination, lack of a promotion, and/or the existence of a hostile work environment. For example, plaintiff testified that, over the course of several years, she was harassed by a white security employee who took pictures of her and claimed plaintiff parked in the wrong parking spaces. Plaintiff reported the conduct to management and stated that she believed the harassment was because of her race. Plaintiff claims that her most recent complaint about this behavior culminated in her superior Hoeppner telling plaintiff the events never happened, that she should stop complaining, and that she would be putting a memo in plaintiff's file about

9

insubordination. Plaintiff alleges she was verbally bullied in front of co-workers, her activities were monitored, she was refused trainings, she was not allowed to enter certain buildings without a management escort, and she was generally humiliated after she began pressing the issue. Further, plaintiff alleges she was targeted for minor incidents such as where she parked and how many minutes she arrived early to work, when white co-workers were not. Plaintiff has also presented evidence from which a fact-finder could conclude that she was passed over for promotional opportunities which were given to largely white applicants.

Certainly, some if not most of these facts, in isolation, would be insufficient to sustain a discrimination or hostile work environment claim based on race or retaliation. However, when the facts are considered holistically, the court cannot conclude that no reasonable juror could find for plaintiff. Even if the evidence offers a "very slender reed upon which to hang [a claim]," *Gibson v. Am. Libr. Ass'n,*, 846 F. Supp. 1330, 1339 (N.D. Ill. 1993), the factual record is sufficient to deny summary judgment in a post-*Ortiz* climate.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (DE # 44) is **DENIED**. The related motion to supplement (DE # 56) and to file a surreply (DE # 58) are **GRANTED.**

The court **ORDERS** the parties to file a joint status report regarding their willingness to engage in a settlement conference before a Magistrate Judge by **October 13, 2023**. A trial date will be set under a separate order.

                                                  **SO ORDERED.**

Date: September 26, 2021

                                        s/James T. Moody
                                        JUDGE JAMES T. MOODY
                                        UNITED STATES DISTRICT COURT